**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| HON. JOSEPH E. SCHMITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-415 (TSE/TCB) |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE OFFICE | ) | |
| OF INSPECTOR GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, as well as Local Rules 7(F)(1) and 56, the U.S. Department of Defense Office of Inspector General ("DoD OIG"), through undersigned counsel, hereby respectfully submits this memorandum of law in support of its motion for summary judgment, in the above-captioned action.

## I.    INTRODUCTION

Despite Plaintiff's inflammatory and speculative allegations concerning the DoD OIG's efforts to "hide the ball" about potential conflicts of interests involving former Department of Defense ("DoD") personnel from the prior administration with respect to a particular procurement (i.e., government contract), this Freedom of Information Act, 5 U.S.C. §§ 551–59 (2018) ("FOIA") case can be easily resolved on summary judgment. Plaintiff filed three FOIA requests with the DoD OIG in 2020 and the agency responded by producing responsive records (or documents), subject to permissible redactions under the statute's exemptions. Plaintiff undisputedly never administratively appealed these responses, and thus has not administratively exhausted those requests. This clear-cut, textbook example of a plaintiff failing to exhaust his administrative

remedies under the FOIA is alone sufficient to grant summary judgment in favor of the DoD OIG. Put simply, a FOIA requester cannot unilaterally conclude that he would rather bring a FOIA dispute before an Article III court and add to this Court's burgeoning docket.

To the extent that the Court excuses and permits Plaintiff to circumvent Congress's mandate for exhaustion—and it should *not*—the DoD OIG is also entitled to summary judgment because it conducted reasonable searches for responsive records and produced them with appropriate redactions. That is all that the FOIA requires. Plaintiff's opposition to summary judgment will likely be fueled by speculative rhetoric and indignation as to how certain purportedly responsive records were not found. But that is no opposition at all, as "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994)). This means that a search remains reasonably adequate and legally sufficient, even if responsive materials "may have [been] missed." *Iturralde*, 315 F.3d at 315 (citations omitted). Thus, any challenge to the DoD OIG's searches based on results and not the actual queries is meritless and irrelevant. Accordingly, the DoD OIG is entitled to summary judgment.

## II.    STATUTORY AND REGULATORY BACKGROUND

### A.    Requesting Records (or Documents) Under the Freedom of Information Act

"Congress passed the Freedom of Information Act to establish a general philosophy of full agency disclosure and to assure the availability of Government information necessary to an informed electorate." *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 818 (4th Cir. 2013) (cleaned up). A federal agency must generally make its internal records available to the public upon a request, subject to certain enumerated categories of records that are statutorily exempt from disclosure. *Id.* (citing 5 U.S.C. §§ 552 (a)(3)(A), (b)(1)–(9)); *see also* 32 C.F.R. §§ 286.3–286.6

(2018).

An individual seeking the release of records pursuant to the FOIA must follow the relevant agency's published regulations for making such a request. *See* 5 U.S.C. § 552(a)(3)(A); *Pollack v. Dep't of Just.*, 49 F.3d 115, 118 (4th Cir. 1995); *Dunnington v. Dep't of Def.*, No. 06-CV-0925 HHK, 2007 WL 60902, at *1 (D.D.C. Jan. 8, 2007). The DoD FOIA regulations explain that the DoD has "a *decentralized* system for responding to FOIA requests." 32 C.F.R. § 286.3 (emphasis added); *see also id.* §§ 286.1, 286.2. That means each FOIA request must be directed to a specific "DoD Component"—it cannot be addressed to DoD as a whole, i.e., all components of DoD at once. *Id.* § 286.3 ("To make a request for records, a requester should write directly to the DoD Component that maintains the records being sought."); *see also* DoD, FOIA Annual Report for Fiscal Year 2020, *available at* https://open.defense.gov/Transparency/FOIA/DoD-Annual-Reports-to-AG/ (section 3.1 identifies over 30 DoD Components). One example of a "DoD Component" is the DoD OIG. *Id.* Another example is the Office of the Secretary of Defense and Joint Staff ("OSD/JS"). *Id.* § 286.3(b). Given the text of the DoD regulations, "only the component to which the FOIA request is directed has an obligation to conduct a search" of responsive records. *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 243 (D.D.C. 2018) (quoting *Ewell v. U.S. Dep't Just.*, 153 F. Supp. 3d 294, 302 (D.D.C. 2016)).

### B.    The Freedom of Information Act's Administrative Scheme

Upon proper receipt of a FOIA request, the agency has 20 business days to respond to the request for records. *Coleman*, 714 F.3d at 819 (citing 5 U.S.C. § 552(a)(6)(A)(i)); *see also* 32 C.F.R. §§ 286.8–286.9. If a requester is dissatisfied with the agency's response to the request because, for example, the agency has purportedly and improperly decided to withhold some or all of the requested records from public disclosure or searched too narrowly, the requester may file an administrative appeal within 90 days. *Coleman*, 714 F.3d at 819–20 (citing 5 U.S.C.

§ 552(a)(6)(A)(i)); *see also* 32 C.F.R. § 286.11. The agency, again, has 20 business days to respond to the appeal. 5 U.S.C. § 552(a)(6)(A)(ii). "If [the] requester is not satisfied with the outcome of an administrative appeal, the requester may seek judicial review of any adverse decision" in a federal district court. *Coleman*, 714 F.3d at 820. "[T]he district court 'has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the [requester-]complainant.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)).

Importantly, once the requested records are produced—even if belatedly so—a FOIA matter becomes moot because the district court is only authorized to enjoin the agency from improperly withholding records responsive to a request. *See Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (citing *Payne Enter., Inc. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988)); *Di Montenegro v. Nat'l Sec. Agency*, No. 17-CV-216-LMB-IDD, 2017 WL 11221246, at *1 (E.D. Va. May 16, 2017); *see also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform. . . . Thus, 'once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.'" (one alteration omitted) (quoting *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980))).

## III.    STATEMENT OF UNDISPUTED FACTS

### A.    The April 2020 Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement

1.    On or about April 15, 2020, DoD OIG publicly released its Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement. DoD OIG, JEDI Cloud Report,

*available at* https://www.dodig.mil/reports.html/Article/2150471/report-on-the-joint-enterprise-defense-infrastructure-jedi-cloud-procurement-do/ (last visited Feb. 15, 2022).

2.      The JEDI Report is generally about "an investigation into allegations that former DoD officials engaged in ethical misconduct related to the JEDI Cloud procurement." *Id.*

3.      The DoD OIG "reviewed the DoD's decision to award the JEDI Cloud contract to a single contractor [Microsoft]; the development of the requirements in the Request for Proposals; the DoD's source selection process; the disclosures of source selection and proprietary information after contract award; and whether the JEDI Cloud source selection was influenced by outside pressure." *Id.*

4.      The DoD OIG also "investigated allegations of ethical misconduct relating to JEDI, including allegations that DoD officials had financial interests that conflicted with duties that related to the JEDI Cloud procurement; failed to comply with standards that govern seeking post-[g]overnment employment; and improperly disclosed procurement information." *Id.*

### B.    Plaintiff's First FOIA Request to the DoD OIG

5.      Plaintiff submitted a request to the DoD OIG on June 3, 2020 for:

all information related to the Case Investigative File ("Case File") or Case Files for the investigation(s) and report posted April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement," including the involvement of the Defense Criminal Investigative Service ("DCIS"), DCIS investigators, or any other Department of Defense Office of Inspector General investigators.

Am. Compl. (Dkt. No. 13) at Ex. A; *id.* ¶ 26; *see also* Declaration of Mark Dorgan ("Dorgan Decl.") ¶ 11; *id.* at Ex. A.

6.      Plaintiff and the DoD OIG subsequently corresponded about the request later that month.  Dorgan Decl. ¶¶ 12–17; *id.* at Ex. B.  Through that correspondence, Plaintiff "narrowed [the] scope" of his request to "the Defense Criminal Investigative Service (DCIS) case file

pertaining to the April 13, 2020, 'Report on the Joint Enterprise Defense Infrastructure Cloud Procurement.'" *Id.* ¶ 17, *id.* at Ex. B; *see also* Am. Compl. (Dkt. No. 13) ¶ 28; *id.* at Ex. C (Plaintiff admitting he "narrow[ed]" the June 3, 2020 request).

7.    On August 14, 2020, the DoD OIG responded to the FOIA request.  Dorgan Decl. ¶ 22; *id.* at Ex. C.  It noted that Plaintiff, after submitting his initial request, had subsequently narrowed the scope of his request to the Defense Criminal Investigative Service (DCIS) case file related to the JEDI report.  *Id.* at Ex. C.  The DCIS is a component of the DoD OIG.  *Id.* ¶ 7a.  The DoD OIG produced a redacted, 22-page DCIS document entitled "Report of Investigation."  *Id.* ¶ 22; *id.* at Ex. C; *see also* Am. Compl. (Dkt. No. 13) ¶ 28.  The DoD OIG applied redactions, pursuant to 5 U.S.C. § 552(b)(4), (b)(5), (b)(6), (b)(7)(C), (b)(7)(E).  *Id.* ¶¶ 49–67; *id.* at Ex. K.  It apprised Plaintiff that if he "consider[ed] this an adverse determination, [he] may submit an appeal." *Id.* at Ex. C.  That appeal had to be postmarked within 90 days.  *Id.*

8.    To date, the DoD OIG has never received an administrative appeal of its August 14, 2020 response to Plaintiff's narrowed request.  *Id.* ¶ 22.  Plaintiff does not dispute this.  *See* Am. Compl. (Dkt. No. 13) ¶¶ 53–54.

### C.    Plaintiff's Second FOIA Request to the DoD OIG

9.    Plaintiff submitted another request to the DoD OIG on August 18, 2020 for:

(a) any and all DCIS "Information Reports" or other DCIS "reports" – other than the DCIS [Report of Investigation] produced on August 14, 2020 – related to the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement"; and (b) any and all reports prepared by other investigators within the DoD Office of Inspector General, e.g., "senior official" or "AI" investigators, related to the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement."

Am. Compl. (Dkt. No. 13) at Ex. B; *id.* ¶ 29; *see also* Dorgan Decl. ¶ 23; *id.* at Ex. D.

10.    On October 30, 2020, the DoD OIG responded to Plaintiff's request and produced a redacted, 7-page document.  Dorgan Decl. ¶ 33; *id.* at Ex. E.  It apprised Plaintiff that if he

"consider[ed] this an adverse determination, [he] may submit an appeal." *Id.* at Ex. E.  That appeal

had to be postmarked within 90 days.  *Id.*

 11. On November 20, 2020, the DoD OIG supplemented its response and produced a

redacted, 22-page document, titled "Information Report."  *Id.* ¶ 34; *id.* at Ex. F; *see also* Am.

Compl. (Dkt. No. 13) ¶ 29.  It apprised Plaintiff that if he "consider[ed] this" additional response

"an adverse determination, [he] may submit an appeal."  *Id.* at Ex. F.  That appeal had to be

postmarked within 90 days.  *Id.*  The DoD OIG applied redactions to both of these productions,

pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(E).  Dorgan Decl. ¶¶ 49–67; *id.* at Ex. K.

 12. To date, the DoD OIG has never received an administrative appeal of the October

30, 2020 and November 20, 2020 responses to Plaintiff's request.  *Id.* ¶ 34.  Plaintiff does not

dispute this.  *See* Am. Compl. (Dkt. No. 13) ¶¶ 53–54.

  **D.** **Plaintiff's Third FOIA Request to the DoD OIG**

 13. Plaintiff submitted another request to the DoD OIG on December 8, 2020 for:

> (a) any and all documents or working papers related to the April 13, 2020, "Report
> on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement,"
> concerning Secretary James N. Mattis, Ms. Sally B. Donnelly, and Mr. Anthony
> DeMartino, including but not limited to interview transcripts or notes, emails, text
> messages, communications, memoranda, and any other documents; and (b) the
> transmittal letter for the April 13, 2020, "Report on the Joint Enterprise Defense
> Infrastructure (JEDI) Cloud Procurement," reportedly signed by Glenn Fine.

Am. Compl. (Dkt. No. 13), Ex. C at 1; *id.* ¶ 30; Dorgan Decl. ¶ 35; *id.* at Ex. G.

 14. On January 26, 2021, the DoD OIG responded to Plaintiff's request and produced

74 pages of redacted interview transcripts.  Dorgan Decl. ¶ 43; *id.* at Ex. I; *see also* Am. Compl.

(Dkt. No. 13) ¶ 31.  It apprised Plaintiff that if he "consider[ed] this an adverse determination, [he]

may submit an appeal."  Dorgan Decl. at Ex. I.  That appeal had to be postmarked within 90 days.

*Id.*

 15. On February 18, 2021, the DoD OIG supplemented its response and produced 89

pages of documents, including redacted interview transcripts. *Id.* ¶ 44; *id.* at Ex. J; *see also* Am. Compl. (Dkt. No. 13) ¶ 32. It informed Plaintiff that potentially responsive documents were "referred" to the OSD/JS as that component was "the release authority" for those documents. Dorgan Decl. ¶ 45; *id.* at Ex. J. It apprised Plaintiff that if he "consider[ed] this an adverse determination, [he] may submit an appeal." *Id.* at Ex. J. That appeal had to be postmarked within 90 days. *Id.* The DoD OIG applied redactions to both of these productions, pursuant to 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E). *Id.* ¶¶ 49–67; *id.* at Ex. K.

16.     To date, the DoD OIG has never received an administrative appeal of the January 26, 2021 and February 18, 2021 responses to Plaintiff's request. *Id.* ¶ 44. Plaintiff does not dispute this. *See* Am. Compl. (Dkt. No. 13) ¶¶ 53–54.

17.     The OSD/JS produced the documents referred to it by the DoD OIG on or about May 27, 2021. *See* Am. Compl. (Dkt. No. 13) ¶ 34.

**E.    Plaintiff's Premature Lawsuit**

18.     Without administratively appealing any of the three FOIA requests to the DoD OIG, Plaintiff filed a one-count, FOIA Complaint against the DoD OIG and the DoD on April 2, 2021, asserting that the DoD OIG failed to produce records responsive to the three FOIA requests directed to the DoD OIG. *See generally* Compl. (Dkt. No. 1) at 1–13. Plaintiff filed an Amended Complaint on June 14, 2021, adding a second count that asserted that the DoD (proxy for the OSD/JS) failed to produce records responsive to a FOIA request submitted *after* the Initial Complaint was filed. Am. Compl. (Dkt. No. 13).

19.     The DoD has been dismissed from this case. *See, e.g.*, Joint Stipulation of Partial Dismissal (Dkt. No. 43). Only Count I of the Amended Complaint remains. *Compare* Am. Compl. (Dkt. No. 13) at 15–16, *with* Joint Stipulation of Partial Dismissal (Dkt. No. 43).

## IV.    STANDARD OF REVIEW

Summary judgment resolves a FOIA action once a federal agency has produced the documents sought by a requester.  *See Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004); *Wickwire Gavin, P.C. v. U.S. Postal Serv.,* 356 F.3d 588, 591 (4th Cir. 2004).  It is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  So, the federal agency is entitled to summary judgment where there is no genuine issue of material fact that it has complied with the FOIA.  *See Wickwire,* 356 F.3d at 591; *see also Havemann v. Colvin*, 629 F. App'x 537, 539 (4th Cir. 2015).  In granting summary judgment for the federal agency, a court can rely on affidavits from agency officials that explain the agency's compliance with the statute.  *See Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 712 (4th Cir. 1986).  To serve as a bar to summary judgment, a disputed fact must be "material," which means that it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   And although the non-moving party is entitled to all reasonable, non-speculative inferences drawn in that party's favor, such inferences still must be justifiable from the evidence, and the non-moving party must present "significantly probative"—not "merely colorable"—evidence in its favor.  *Id.* at 264.

## V.    ARGUMENT

The DoD OIG is entitled to summary judgment because Plaintiff cannot dispute that he failed to exhaust his administrative remedies.  And even if he could somehow be excused, the DoD OIG conducted a reasonable search for responsive records to his three FOIA requests and produced responsive records with permissible redactions.

### A.    The DoD OIG is Entitled to Summary Judgment Because Plaintiff Has Not Exhausted His Administrative Remedies for Any of the Three FOIA Requests to the Agency.

The FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial

review." *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003). "Before commencing litigation [in district court], a requester must ordinarily exhaust administrative remedies by appealing an issue through the FOIA administrative process following an initial adverse determination by the agency." *Coleman*, 714 F.3d at 820 (citations omitted); *see also Manivannan v. Nat'l Energy Tech. Lab'y*, 843 F. App'x 481, 482 (4th Cir. 2021) ("NETL was entitled to summary judgment with respect to request Number 890 because Manivannan did not exhaust his administrative remedies prior to filing suit."); 5 U.S.C. § 552(a)(4)(B), (a)(6)(A)(i)–(ii); 32 C.F.R. § 286.11 (DoD regulation for FOIA appeals instruct appeals to be filed within 90 days of an initial adverse determination). An initial adverse determination is ripe for administrative appeal where the agency has "notif[ied] the requester of its decision on whether and how it will comply, its reasons for that decision, and the requester's right to appeal any adverse determination to the agency head." *Pollack v. Dep't of Just.*, 49 F.3d 115, 118 (4th Cir. 1995) (citing 5 U.S.C. § 552(a)(6)(A)(i)); *see also* 32 C.F.R. § 286.9(f). An appeal of the initial adverse determination would result in actual exhaustion of administrative remedies.[1] *E.g.*, *Bd. of Sup'rs of Prince William County. v. U.S. Dep't of Homeland Sec.*, No. 11-CV-819-JCC-JFA, 2012 WL 695889, at *3 (E.D. Va. Mar. 1, 2012).

Here, Plaintiff has never administratively appealed any of the DoD OIG's responses to his three FOIA requests. Plaintiff does not deny this. *See* Am. Compl. (Dkt. No. 13) ¶¶ 53–54.

---

[1] A plaintiff may be deemed to have constructively exhausted the administrative process "and may commence litigation immediately if 'the agency fails to comply with the applicable time limit provisions' of the FOIA statute, so long as the agency has not cured its violation by responding before the requester files suit." *Coleman*, 714 F.3d at 818 (citing *Pollack*, 49 F.3d at 118) (quoting 5 U.S.C. § 552(a)(6)(C)(i)); *see also Manivannan v. Nat'l Energy Tech. Lab'y*, 843 F. App'x 481, 482 (4th Cir. 2021); *Prince William County*, 2012 WL 695889, at *3. "This constructive exhaustion provision allows [the] requester to break out of the administrative process and proceed directly to federal court in the face of an unresponsive agency." *Coleman*, 714 F.3d at 820. Constructive exhaustion is irrelevant here as the DoD OIG produced all the responsive documents that were in its possession before Plaintiff filed suit on April 2, 2021.

Correctly so.   The DoD OIG responded to each of the three FOIA requests, including the production of responsive documents to those requests.  Dorgan Decl. ¶¶ 11–48; *id.* at Exs. C, E–F, I–J.  These responses informed Plaintiff that the DoD OIG believed it had adequately responded to his requests and that he had a right to administratively appeal the responses, if he deemed them adverse.  *Id.* ¶¶ 22, 33–34, 43–44 at Exs. C, E–F, I–J.  Upon receipt of these responses, Plaintiff was required to administratively appeal them before rushing to this Court for purported relief.  *See Coleman*, 714 F.3d at 818, 819–20; *Dagulo v. United States*, No. 18-CV-366-RGD, 2020 WL 2846488, at *5 (E.D. Va. Apr. 17, 2020), *aff'd*, 829 F. App'x 640 (4th Cir. 2020); *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 337–39 (D.D.C. 2018), *aff'd*, 943 F.3d 959 (D.C. Cir. 2019); *Rosenberg v. U.S. Dep't of Immigr. & Customs Enf't*, 954 F. Supp. 2d 1, 14–15 (D.D.C. 2013); *Kenney v. U.S. Dep't of Just.*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009); *Looney v. Walters-Tucker*, 20 F. Supp. 2d 70, 71 (D.D.C. 1998).  Notably, "disappointment in the quality of the records provided does not dispense with the administrative appeal requirement of the FOIA." *Prince William County*, 2012 WL 695889, at *4 (quoting *Stuler v. IRS*, No. 10-CV-1342-DWA, 2011 WL 2516407, at *3 (W.D. Pa. June 23, 2011)).  But Plaintiff did not file administrative appeals of the DoD OIG's responses, which would have exhausted his administrative remedies, and the time to do so has long run out.

Plaintiff may argue that he should be excepted from the rule of exhaustion because the administrative process would have been futile.  *See* Am. Compl. (Dkt. No. 13) ¶ 54.  But courts have concluded that there is no futility exception to the rule of exhaustion under the FOIA.  *E.g.*, *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 134 F. Supp. 3d 437, 439 (D.D.C. 2015); *Rosenberg v. U.S. Dep't of Immigr. & Customs Enf't*, 954 F. Supp. 2d 1, 13 (D.D.C. 2013); *Rosenberg v. U.S. Dep't of Immigr. & Customs Enf't*, 956 F. Supp. 2d 32, 40–41  (D.D.C. 2013); *Freedom Watch,*

*Inc. v. CIA*, 895 F. Supp. 2d 221, 227 n.2 (D.D.C. 2012).  And to the extent certain courts have allowed such an exception, futility is found only "when it appears that the agency has already addressed the plaintiff's [FOIA] claims at a *second level of review*."  *Khine*, 334 F. Supp. 3d at 336 n.10 (emphasis added), *aff'd*, 943 F.3d 959 (D.C. Cir. 2019); *see also Feinman v. CIA*, No. 08-CV-2188-EGS, 2009 WL 10692650, at *7 (D.D.C. Aug. 6, 2009).  Plaintiff has no evidence that the DoD OIG personnel responsible for appellate review of the agency's first-level responses to the three 2020 FOIA requests "would not [have] address[ed] [his] concerns in an administrative appeal."  *Khine*, 334 F. Supp. 3d at 336 n.10.

Therefore, the DoD OIG is entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies for his three 2020 FOIA requests.

**B.    Alternatively, the DoD OIG is Entitled to Summary Judgment Because the Agency Conducted Reasonable Searches and Properly Applied Redactions.**

**1.    The DoD OIG searched electronic databases that were likely to contain responsive records.**

Records responsive to a FOIA request must be produced unless they are statutorily exempt from disclosure.  5 U.S.C. § 552(a)(3), (b).  "In responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format . . . ."  *Id.* § 552(a)(3)(C).  "[T]he FOIA does not require a perfect search" for responsive records from the agency, "only a reasonable one."  *Rein v. USPTO*, 553 F.3d 353, 362 (4th Cir. 2009) (citing *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).  "[T]he relevant question is not whether every single potentially responsive document has been unearthed."  *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994) (quoting *Perry*, 684 F.2d at 128).  In other words, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde*, 315 F.3d at 315 (citing *Steinberg*, 23 F.3d at 551).  A search is reasonably thorough so long as the places that are "likely to contain responsive

materials" are searched. *Ethyl Corp.*, 25 F.3d at 1247 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). This means that a search remains reasonably thorough, even if responsive materials "may have [been] missed." *Iturralde*, 315 F.3d at 315 (citations omitted). The agency "has the burden of establishing the adequacy of its search and that any identifiable document has . . . been produced . . . ." *Heily v U.S. Dep't of Com.*, 69 F. App'x 171, 173 (4th Cir. 2003) (citing *Carney v. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994)). "This burden may be met through affidavits explaining the manner in which the search was conducted." *Id.* "The court is entitled to accept the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." *Id.* (first citing *Bowers v. U.S. Dep't of Just.*, 930 F.2d 350, 357 (4th Cir. 1991); then citing *Carney*, 19 F.3d at 812). Here, the Director of the Freedom of Information Act, Privacy and Civil Liberties Office of the DoD OIG ("Director") has thoroughly explained each of the searches that were conducted in response to the three FOIA requests.

i.    A reasonable search for documents responsive to the first (April 2020) FOIA request

Plaintiff narrowed the scope of his first FOIA request "to the Defense Criminal Investigation Service (DCIS) case file." Dorgan Decl. ¶ 17; *id.* at Ex. B. The DCIS is "the criminal investigative arm of the DoD OIG." *Id.* ¶ 7a. The DCIS utilizes the Case Reporting and Information Management System ("CRIMS"). *Id.* ¶ 19. "CRIMS is the principal reporting system for timely reporting of DoD investigative activities." *Id.* To find responsive records to the narrowed FOIA request, the DCIS conducted "a query of the CRIMS system, and electronic shared files utilizing the search terms 'Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement,' 'Joint Enterprise Defense Infrastructure Cloud Procurement,' 'JEDI Cloud Procurement,' 'JEDI,' and 'Joint Enterprise Defense Infrastructure.'" *Id.* ¶ 20. The query returned responsive records in the form of a 22-page DCIS Report of Investigation, which was subsequently

reviewed and produced to Plaintiff with redactions. *Id.* ¶¶ 21–22; *id.* at Ex. C. In sum, the DoD OIG conducted a reasonable search for responsive records to the first FOIA request.

ii.    A reasonable search for records responsive to the second (August 2020) FOIA request

The second FOIA request sought DCIS information reports other than the one that the DoD OIG had produced in response to the first FOIA request, as well as reports prepared by other investigators related to the JEDI Report. *Id.* ¶ 23; *id.* at Ex. D. The Director determined that the DCIS should be searched. *Id.* ¶ 25. Again, this query returned responsive records that were produced. *Id.* ¶¶ 26–28, 33–34.

The Director requested additional searches as well. *Id.* ¶ 29. The Director instructed the Deputy Inspector General for Administrative Investigations ("AI") to search for responsive records under the Whistleblower Reprisal Investigations ("WRI") Directorate and the DoD Hotline ("HL") Directorate. *Id.* ¶¶ 29–30. These Directorates "utilize the Defense Case Activity Tracking System" ("D-CATS") to store information electronically. *Id.* ¶ 30. The HL Directorate queried its D-CATS utilizing the search terms "Joint Enterprise Defense Infrastructure" and "JEDI." *Id.* ¶ 31. No responsive records were found. *Id.* The WRI Directorate also queried its D-CATS utilizing the search term "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement." *Id.* ¶ 32. No responsive records were found. *Id.* In sum, the DoD OIG conducted a reasonable search for responsive records to the second FOIA request.

iii.    A reasonable search for records responsive to the third (December 2020) FOIA request

The third FOIA request sought documents about the JEDI Report with respect to Secretary James N. Mattis, Sally B. Donnelly, and Anthony DeMartino, as well as the transmittal letter for the JEDI Report signed by Glenn Fine. *Id.* ¶ 35; *id.* at Ex. G. The Director determined that

responsive records would most likely be held by AI and then directed the AI to search for responsive records under the Investigations of Senior Officials ("ISO") Directorate. *Id.* ¶¶ 37–38. The ISO also uses D-CATS to store information electronically. *Id.* ¶ 39. The ISO queried its D-CATS using the search term "'20190321-056996-CASE-01,' the case number the ISO Directorate assigned to all records involving JEDI," and "then searched within this case number to produce the potentially responsive records." *Id.* ¶ 40. Responsive records were identified and produced.[2] *Id.* ¶¶ 41, 43–44. In sum, the DoD OIG conducted a reasonable search for responsive records to the third FOIA request.

### 2.    The FOIA authorized DoD OIG to redact certain information.

The FOIA requires an agency "to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions listed in § 552(b)." *E.g.*, *Heily*, 69 F. App'x at 173. The agency bears the burden of establishing the applicability of an exemption and may do so through affidavits. *Heily*, 69 F. App'x at 173 (citing *Carney*, 19 F.3d at 812). "An agency's affidavits must be relatively detailed and nonconclusory in order to support a FOIA exemption." *Id.* (citations omitted). The agency may identify the bases of any withholding or redaction of responsive documents through the same agency affidavits that explain how the agency conducted a reasonable search for those responsive documents. *See id.* It may also do so (but does not have to) through a submission called a *Vaughn* index. *See Rein*, 553 F.3d at 357 n.6 (explaining a *Vaughn* index); *see also Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994) ("Since a court's primary focus must be on the substance, rather than the form, of the information supplied by the

---

[2] Some of these responsive records were referred to the OSD/JS for review as the OSD/JS was the release authority for those records. Dorgan Decl. ¶ 44–45; *id.* at Ex. J. Those records were released during this litigation, and the OSD/JS (through the DoD) has been dismissed from this case. Am. Compl. (Dkt. No. 13) ¶ 34; Joint Stipulation of Partial Dismissal (Dkt. No. 43).

government to justify withholding requested information[,] whether that evidence comes in the form of an in camera review of the actual documents, something labelled a *Vaughn* Index, a detailed affidavit, or oral testimony  cannot be decisive.  The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege [or exemption]." (cleaned up)).  Here, as explained by the Director *and* demonstrated in a *Vaughn* index, the DoD OIG's productions contained statutorily-permissible redactions under 5 U.S.C. § 552(b)(4) (or "Exemption 4"); 5 U.S.C. § 552(b)(5) (or "Exemption 5"); 5 U.S.C. § 552(b)(6) (or "Exemption 6"); 5 U.S.C. § 552(b)(7)(C) (or "Exemption 7(C)"); and 5 U.S.C. § 552(b)(7)(E) (or "Exemption 7(E)").

i.    Exemption 4

Exemption 4 protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential . . . ."  5 U.S.C. § 552(b)(4).  Commercial and financial information is "confidential" when it is "customarily and actually treated as private by its owner and provided to the government under an assurance of privacy . . . ."  *Food Mktg. Inst. v. Argus Leader Media*, _ U.S. _, _, 139 S. Ct. 2356, 2366 (2019).[3]

---

[3]  *Food Marketing* implicitly overruled the Fourth Circuit's approach to assessing confidentiality under Exemption 4.  Long ago, the Fourth Circuit endorsed a test for confidentiality that the D.C. Circuit had announced.  *See Acumenics Rsch. & Tech. v. U.S. Dep't of Just.*, 843 F.2d 800, 807 (4th Cir. 1988) (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974)).  The D.C. Circuit subsequently altered that test, effectively creating two different inquiries depending on whether the information was involuntarily or voluntarily provided to the federal government.  *See Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 877–79 (D.C. Cir. 1992) (en banc); *see also Food Mktg.*, _ U.S. at _, 139 S. Ct. at 2363–65 (tracking evolution of D.C. Circuit's confidentiality jurisprudence); *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 597 (4th Cir. 2004) (noting two different tests for confidentiality).  *Food Marketing* criticized how these inquiries came to be and held that regardless of how information reaches the government, it remains confidential when it is "customarily and actually treated as private by its owner and provided to the government under an assurance of privacy . . . ."  _ U.S. at _, 139 S. Ct. at 2362–66.

Here, the Director applied redactions pursuant to Exemption 4 to certain information contained in the records responsive to the first FOIA request. Dorgan Decl. ¶¶ 50–51; *id.* at Ex. K. The information was redacted because the submitter of that information "has a commercial interest" in it and that information was of the kind that the submitter would not customarily release to the public (i.e., confidential)." *Id.* ¶ 51. Disclosure of this information would likely impair the DoD OIG's effectiveness in conducting investigations in the future and "cause substantial competitive harm to the submitter." *Id.* In sum, the DoD OIG properly redacted information under Exemption 4.

ii.    Exemption 5

Exemption 5 shields "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 includes the attorney-client privilege and the deliberative process privilege. *Solers, Inc. v. IRS*, 827 F.3d 323, 329–30 (4th Cir. 2016) (ellipses omitted) (quoting *Rein*, 553 F.3d at 371); *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, _ U.S. _, _, 141 S. Ct. 777, 785 (2021). "The attorney-client privilege is designed to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Rein*, 553 F.3d at 375 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "It 'is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980)). "Moreover, the privilege 'protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Id.* (quoting *Hanson v. U.S. Agency for Int'l*

*Dev.*, 372 F.3d 286, 291 (4th Cir. 2004)).  This privilege extends to communications between the agency and its lawyers.  *Id.* at 376.

And the deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."  *Solers*, 827 F.3d at 320 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)).  To justify application of the privilege, the context in which the materials were used must be "both predecisional and deliberative."  *Id.* (quoting *City of Va. Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993)).  "Predecisional documents are those prepared in order to assist an agency decisionmaker in arriving at his decision, and deliberative documents are those that reflect the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes."  *Id.* (cleaned up).  "The privilege thus protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'"  *Id.* (emphasis omitted) (quoting *City of Va. Beach*, 995 F.2d at 1253).

Here, the DoD OIG applied redactions pursuant to Exemption 5 to certain information contained in the records responsive to the first and third FOIA requests.   Dorgan Decl. ¶¶ 52–54; *id.* at Ex. K.  With respect to the first FOIA request, some of the redacted information is protected by the attorney-client privilege.   *Id.* ¶ 53; *id.* at Ex. K.  The documents contained privileged information exchanged between "federal employee Deap Ubhi and the DoD Office of General Counsel, DoD Standards of Conduct Office about Amazon's interest in purchasing Ubhi's company."  *Id.* ¶ 53.  "Additional redactions included communications between another federal employee and an Associate General Counsel, Department of the Navy about Victor Gavin's

attendance at an April 2018 meeting." *Id.* And the remaining information is protected by the deliberative process privilege. *Id.* ¶ 54. That information reflected "pre-decisional courses of action, concerning the JEDI Cloud acquisition and pre-decisional conclusions of information of vendor acquisition of the JEDI Cloud." *Id.*

The DoD OIG also relied upon Exemption 5 to redact one sentence of information from records responsive to his third FOIA request. *Id.* That information reflected a pre-decisional, opinion provided by Mr. Mattis during an interview about the submarine group at Bangor Washington—a matter unrelated to JEDI. *Id.* In sum, the DoD OIG properly redacted information under Exemption 5.

### iii.    Exemption 6

Exemption 6 safeguards from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(6); *see also Solers*, 827 F.3d at 332. The "purpose of [E]xemption 6 is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Core v. U.S. Postal Serv.*, 730 F.2d 946, 947 (4th Cir. 1984) (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)). The scope of Exemption 6 is to be interpreted broadly. *See Wash. Post*, 456 U.S. at 599–603.

Further, the Fourth Circuit has explained that "the phrase 'similar files' . . . should be given 'a broad, rather than narrow meaning[.]'" *Solers*, 827 F.3d at 332 (quoting *Wash. Post*, 456 U.S. at 600). And so "when disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *Id.* (alteration omitted) (quoting *Wash. Post Co.*, 456 U.S. at 602). That determination relies on a balancing of the

individual's privacy interests against the public interest in disclosure. *Id.* "The public interest is served to the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (cleaned up); *see also Jud. Watch, Inc. v. United States*, 84 F. App'x 335, 339 (4th Cir. 2004) ("Exemption 6 analysis . . . must weigh the privacy interest of lower level federal employees in the nondisclosure of their names against the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." (cleaned up)). This exemption protects from disclosure identifying information of lower level federal employees, such as their names and addresses. *See Jud. Watch*, 84 F. App'x at 339.

Here, the Director redacted personal identifying information (or "PII") for non-senior level DoD employees from records responsive to all three FOIA requests. Dorgan Decl. ¶¶ 55–61; *id.* at Ex. K. The redactions "protect from disclosure[] the names, phone numbers, signatures, initials, and email addresses of DoD OIG personnel throughout the responsive documents." *Id.* ¶ 61. They also protect "the names, addresses, initials, and personal identifying information of Federal employees, subjects and other third parties" associated with investigations related to the JEDI Report. *Id.* The Director "determined that all of these individuals have cognizable privacy interests in this [personal] information because, at a minimum, public disclosure of this information could subject these individuals to unwarranted attention or harassment in the performance of their duties." *Id.* The redactions are consistent with longstanding DoD practice of withholding personal identifying information of federal employees who are at: (1) the military rank of Colonel or below; or (2) the pay grade of GS-15 or below. *Id.* ¶¶ 56–58. And courts have routinely upheld this practice. *See Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 627–28

(S.D.N.Y. 2018) (approving Exemption 6 redactions for "members who hold the military rank of Colonel or below, or are otherwise ranked on the General Schedule . . . at GS–15 or lower" (quotation marks and citation omitted); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 197 F. Supp. 3d 165, 175 (D.D.C. 2016) (finding that Exemption 6 is applicable to personal identifying information "of those members of DoD who are at the military rank of Colonel or below and at the rank of GS-15 or below" (quotation marks and citation omitted)); *Viet. Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 230–31 (D. Conn. 2014) (same); *see also Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 90 (D.D.C. 2018) (accepting concession that Exemption 6 was properly in accordance with this practice); *Cause of Action Inst. v. U.S. Dep't of the Army*, 2019 WL 4750213, at *8 (D.D.C. Sept. 29, 2019) (approving Exemption 6 redactions "limited to Army personnel below the rank of Colonel (O6) and civilian personnel below the GS-15 pay grade who did not otherwise interact with the press"); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 523–25 (S.D.N.Y. 2010) (similar); *Kimmel v. U.S. Dep't of Def.*, 2006 WL 1126812, at *3 (D.D.C. Mar. 31, 2006) (approving Exemption 6 for use with "names of civilian personnel below the level of office-director and military personnel below the rank of Colonel (Captain in the Navy)").  In sum, the DoD OIG properly redacted information under Exemption 6.

iv.    Exemptions 7(C) and 7(E)

Exemption 7(C) screens from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  And like Exemption 6, a determination as to whether an invasion of privacy is unwarranted relies on a balancing of the individual's privacy interests

against the public interest in disclosure of the information compiled for law enforcement purposes. *Neely v. FBI*, 208 F.3d 461, 463–64 (4th Cir. 2000) (citing *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989)).  Relatedly, Exemption 7(E) permits withholding of:

> [R]ecords or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).  An agency may properly withhold "internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002).  Law enforcement purposes includes enforcement pursuant to both civil and criminal statutes.  *See, e.g.*, *id.* at 77.  Notably, this exemption "sets a relatively low bar for the agency to justify withholding," it merely requires that the agency explain "how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal citations omitted) (quoting *Mayer Brown, LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).  The agency "usually meets this burden by showing that the records at issue are involved with the enforcement of a statute or regulation within its authority and that the records were compiled for adjudicative or enforcement purposes." *Gluckman v. U.S. Dep't of Lab.*, No. 13-CV-169-JRS, 2013 WL 6184957, at *5–6 (E.D. Va. Nov. 26, 2013).

Here, the Director redacted information compiled for law enforcement purposes that could reasonably be expected to lead to an unwarranted invasion of personal privacy from records responsive to all three FOIA requests.  Dorgan Decl. ¶¶ 55–61; *id.* at Ex. K. Again, like the

Exemption 6 redactions, the Exemption 7(C) redactions "protect from disclosure, the names, phone numbers, signatures, initials, and email addresses of DoD OIG personnel throughout the responsive documents." *Id.* ¶ 61. They also protect "the names, addresses, initials, and personal identifying information of Federal employees, subjects and other third parties" associated with investigations related to the JEDI Report. *Id.* The Director "determined that all of these individuals have cognizable privacy interests in this [personal] information because, at a minimum, public disclosure of this information could subject these individuals to unwarranted attention or harassment in the performance of their duties." *Id.*

The Director also redacted information compiled for law enforcement purposes that would disclose techniques, procedures, or guidelines related to DoD OIG investigations from records responsive to all three FOIA requests. *Id.* ¶¶ 62–64; *id.* at Ex. K. The redactions "protect from disclosure law enforcement database codes, to include administrative and computer codes, law enforcement techniques used to gather information and law enforcement sensitive information contained in reports of investigations or records." *Id.* ¶ 64. "The release of such information would reveal and allow for the retrieval of information about the investigation, procedures, techniques, and guidelines that are not well-known to the public." *Id.* "The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities." *Id.* In sum, the DoD OIG properly redacted information under Exemptions 7(C) and 7(E).

## VI.    CONCLUSION

For the foregoing reasons, the DoD OIG respectfully requests that this Court enter summary judgment in its favor as to Count I of the Amended Complaint.

Dated: February 15, 2022

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:_____/s/_____
HUGHAM CHAN
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:    (703) 299-3743
Fax:    (703) 299-3983
Email: hugham.chan@usdoj.gov

*Counsel for Defendant Department of
Defense Office of Inspector General*

*Of Counsel*:    Erin Mellen
Associate General Counsel
Department of Defense Office of Inspector
General