IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HON. JOSEPH E. SCHMITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:21-cv-415 (TSE/TCB) |
| | ) |
| U.S. DEPARTMENT OF DEFENSE OFFICE OF INSPECTOR GENERAL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPLY IN SUPPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff has now narrowed this case dramatically. He does not dispute that the U.S. Department of Defense Office of Inspector General ("DoD OIG") properly withheld (or redacted) certain information from the records (or documents) that it produced in response to Plaintiff's three requests under the Freedom of Information Act, 5 U.S.C. §§ 551–59 ("FOIA"). He is also silent as to how the DoD OIG's searches relating to his first two FOIA requests are inadequate and unreasonable. Thus, the only remaining issues before this Court are: (1) whether Plaintiff was required to have exhausted his administrative remedies before rushing to this Court; and (2) whether the DoD OIG conducted an adequate and reasonable search in response to his third FOIA request. Both must be answered in the affirmative.

First, exhaustion of administrative remedies (or exhaustion) under the FOIA is the rule. The doctrine of futility is an exception to the rule. That exception does not apply here as there is no evidence that DoD OIG would *certainly* have ruled against Plaintiff on any administrative appeal. As such, Plaintiff needed to exhaust his administrative remedies before filing this FOIA suit. Second, Plaintiff insists that the DoD OIG did not conduct an adequate and reasonable search

for his third FOIA request because it failed to find certain records that are purportedly responsive, and it failed to search record systems that were unlikely to yield responsive records. Neither of these bases calls into question the integrity of the agency's search as a matter of law. Therefore, the Court should enter summary judgment for the DoD OIG.

I.     NO MATERIAL FACTS ARE IN DISPUTE

To the extent Plaintiff has tried to dispute the DoD OIG's proffered facts, he has not demonstrated a genuine dispute over those facts. His responses attempt either to inject facts that are immaterial to the issues of exhaustion and the adequacy and reasonableness of the DoD OIG's search in response to the three FOIA requests or to mask legal contentions as purported facts.

   A.     Reply to Plaintiff's Responses to Defendant's Undisputed Facts[1]

6.     While Plaintiff asserts that this fact is disputed, it is not. Plaintiff narrowed his first FOIA request—Plaintiff's additional statement about why he did so is irrelevant and thus immaterial to this dispute.

7.     While Plaintiff asserts that this fact is disputed, it is not. Plaintiff narrowed his first FOIA request and the DoD OIG produced a responsive record. The number of pages is irrelevant.

8.     Plaintiff's purported dispute is actually non-responsive to the stated fact. He does not dispute that to date, the DoD OIG has never received an administrative appeal of its August 14, 2020 response to Plaintiff's narrowed request.

10.    While Plaintiff asserts that this fact is disputed, it is not. Plaintiff's response is merely a (wrongful) legal contention that he did not need to exhaust his administrative remedies.

12.    Plaintiff's purported dispute is actually non-responsive. He does not dispute that to date, the DoD OIG has never received an administrative appeal of its October 30, 2020 and

---

[1] If Plaintiff admitted that a fact is undisputed, Defendant has no reply to that admission.

November 20, 2020 responses to Plaintiff's second FOIA request.

14. Defendant acknowledges that the relevant excerpt of the January 26, 2021 letter states: "If you consider this an adverse determination, you may submit an appeal now, or submit an all-inclusive appeal upon receiving the complete response. Your appeal, if any, must be postmarked within 90 days of the date of this letter, clearly identify the determination that you would like to appeal, and reference to the FOIA case number above."

15. While Plaintiff asserts that this fact is disputed, it is not. Plaintiff's response is merely a (wrongful) legal contention that he did not need to exhaust his administrative remedies.

16. Plaintiff's asserted dispute relies on a misreading of the February 18, 2021 letter. That letter states:

> As this constitutes our final response, we have *completed* our processing of your [third FOIA] request and will *administratively close* it in our office.
>
> The Administrative Investigation component conducted a search and located records responsive to your request. . . .
>
> We will send the responsive documents to you via email. . . .
>
> During the review, we determined that the Office of the Secretary of Defense/Joint Staff (OSD/JS) is the release authority for documents that may be responsive to your request. We have referred those pages to Office of the Secretary of Defense/Joint Staff, FOIA Requester Service Center, 1155 Defense Pentagon, Washington, DC 20301-1155, for processing and direct response to you. If you would like to inquire about the status of this portion of your request, please contact the OSD/JS directly by calling (866) 574-4970 or sending an email to whs.mc-alex.esd.mbx.osd-js-foia-requester-service-center@mail.mil.

Dorgan Decl. (Dkt. No. 51-1) at Ex. I (emphasis added). Relevant here, the DoD OIG considered its response to the third FOIA request complete—if Plaintiff had any issues with the referred records, those issues had to be addressed with the OSD/JS. *Id.* Plaintiff's response also contains a (wrongful) legal contention that he did not need to exhaust his administrative remedies.

17. While Plaintiff asserts that this fact is disputed, it is not. As the May 26, 2021 letter

3

from the *OSD/JS—not* DoD OIG—explained to Plaintiff, "[a]ppellate rights are moot" with respect to "the final response to [the] referral [of records] *to the Office of the Secretary of Defense/Joint Staff FOIA Requester Service Center* of your December 8, 2020 FOIA request . . . ." Opp'n at Ex. 2 (Dkt. No. 53-2) (emphasis added). What the OSD/JS represented about appellate rights with respect to its response regarding the referred records has no bearing on the *DoD OIG*'s responses to Plaintiff's third FOIA request.

18.     While Plaintiff asserts that this fact is disputed, it is not. Plaintiff's response is merely a (wrongful) legal contention that he did not need to exhaust his administrative remedies.

### B.     Responses to Plaintiff's Proffered Undisputed Facts

These proffered facts were unnecessary to the resolution of this case and seemingly recited to manufacture a genuine dispute of fact where there is none. And, Defendant notes that Plaintiff's proffered facts are all aimed at (incorrectly) portraying Defendant's search to his *third* FOIA request as inadequate. There appears to be no dispute that Defendant conducted adequate and reasonable searches to his first and second FOIA requests.

20.     Undisputed, but immaterial as the DoD OIG searched the record system that was likely to have responsive records to the third FOIA request. *See infra* Part III.

21.     Disputed. Plaintiff's third FOIA request was to the DoD OIG. Dorgan Decl. (Dkt. No. 51-1) at Ex. G.

22.     Undisputed, but immaterial as the DoD OIG searched the record system that was likely to have responsive records to the third FOIA request and any alleged records that were missed by the search are not indicative of an inadequate search. *See infra* Part III.

23.     Undisputed.

24.     Undisputed.

4

25. Disputed. The February 18, 2021 production included other responsive documents. *See, e.g.*, Am. Compl. (Dkt. No. 13) ¶ 32 (production included an email regarding Anthony DeMartino).

26. Disputed. It attributes authorship of the letter to the DoD OIG when this letter was actually authored by the *OSD/JS solely with respect to the referred records*.

27. Disputed to the extent that the term "the government" includes the DoD OIG. Responsive documents produced during the course of litigation were by the OSD/JS *not* the DoD OIG. *See* Dorgan Decl. (Dkt. No. 51-1) at Ex. J; Opp'n at Ex. 2 (Dkt. No. 53-2).

28. Undisputed, but immaterial as the materials on the website are not indicative of an inadequate search. *See infra* Part III.

29. Undisputed, but immaterial as the Fact Book is not indicative of an inadequate search. *See infra* Part III. For this reason, the DoD OIG never raised it in the agency's proffered undisputed facts.

30. Disputed only to the extent it is inconsistent with the explanation of the Fact Book by the Director of the Freedom of Information Act, Privacy and Civil Liberties Office of the DoD OIG. *See* Supplemental Declaration of Mark Dorgan ("Supp'l Dorgan Decl.") ¶ 4.

31. Undisputed (material only to the extent it rebuts the suggestion that the DoD OIG conducted an inadequate search).

32. Undisputed (material only to the extent it rebuts the suggestion that the DoD OIG conducted an inadequate search).

33. Undisputed (material only to the extent it rebuts the suggestion that the DoD OIG conducted an inadequate search).

34. Disputed and/or immaterial. After conducting an adequate and reasonable search

in response to Plaintiff's third FOIA request, the DoD OIG produced all responsive records. Dorgan Decl. (Dkt. No. 51-1) ¶¶ 35–44, 48.

35. Disputed and/or immaterial. After conducting an adequate and reasonable search in response to Plaintiff's third FOIA request, the DoD OIG produced all responsive records. Dorgan Decl. (Dkt. No. 51-1) ¶¶ 35–44, 48.

36. The first sentence is undisputed, but immaterial as correspondence between counsel during the course of litigation is not a factor as to the adequacy and reasonableness of the DoD OIG's search in response to the third FOIA request. *See infra* Part III. The second sentence is disputed in that the while Plaintiff has mentioned the existence of the Fact Book, the DoD OIG has never deemed its mere existence (or what Plaintiff perceives as responsive in that Fact Book) as dispositive as to whether it had conducted an adequate and reasonable search in response to Plaintiff's third FOIA request.[2]

37. Undisputed.

38. Undisputed, but for clauses (c) and (d) of this paragraph. The undisputed clauses are immaterial as neither is indicative that the search in response to Plaintiff's third FOIA request was in adequate. *See infra* Part III. Clause (c) is only disputed to the extent that it suggests that the DoD OIG did not search a subset of that data that was likely to have records responsive to the third FOIA request. *See* Dorgan Decl. (Dkt. No. 51-1) ¶¶ 37–38. As for clause (d), the DoD OIG's search for responsive records to the third FOIA request *did* include the records referred to in the

---

[2] Plaintiff cannot amend his third FOIA request through correspondence between counsel during litigation. *See, e.g.*, *Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67, 86 (D.D.C. 2020) ("[The plaintiff's] subsequent statements during litigation do not alter the content of the request itself. [The] [p]laintiff's contention that a FOIA requester can explicitly narrow, test, and then broaden his request in this way after filing litigation sits without any firm basis in the statutory text or associated case law." (citing cases)).

6

Fact Book. *See* Supp'l Dorgan Decl. ¶ 4.

    39.    Disputed to the extent it is inconsistent with the following chronology:

        a.    On or about April 25, 2020, the DoD OIG publicly released the JEDI Report, which in part noted that it examined approximately 31.2 gigabytes of e-mails and 1.05 gigabytes of relevant documents to compile the JEDI Report, *see, e.g.*, Opp'n at Ex. 1 (Dkt. No. 53-1) (page 4);

        b.    Plaintiff submitted the first FOIA Request on June 3, 2020, and subsequently narrowed that request to the DCIS case file pertaining to the JEDI Report, *see, e.g.*, Summ. J. Mem. at 5–6 (¶¶ 5–6);

        c.    Defendant produced the DCIS case file pertaining to the JEDI Report on August 14, 2020, *see, e.g., id.* at 6 (¶ 7);

        d.    Plaintiff submitted the second FOIA Request on August 18, 2020, and the DoD OIG produced responsive records on October 30, 2020 and November 20, 2020, *see, e.g., id.* at 6–7 (¶¶ 10–11);

        e.    Plaintiff submitted the third FOIA request on December 8, 2020, and the DoD OIG produced responsive records on January 16, 2021 and February 18, 2021, *see, e.g., id.* at 7–8 (¶¶ 13–15);

        f.    The DoD OIG told Plaintiff that its response to the third FOIA request was complete on February 18, 2021 and that any challenges to the response had to be administratively appealed, *see, e.g., id.*;

        g.    With respect to the third FOIA request, the DoD OIG also referred records to the OSD/JS for processing and direct response, *see, e.g., id.*; and

        h.    The OSD/JS completed processing those referred records and produced responsive records on or about May 27, 2021, and it also informed Plaintiff that his administrative appellate rights were moot with respect to the referral, *see* Opp'n at Ex. 2 (Dkt. No. 53-2).

## II. PLAINTIFF HAS NOT SHOWN THAT EXHAUSTION WOULD HAVE BEEN FUTILE.

Plaintiff does not dispute that some courts have held that there is simply no futility exception to FOIA's exhaustion requirement at all. *Compare* Summ. J. Mem. (Dkt. No. 51) at 11–12, *with* Opp'n (Dkt. No. 53) at 17–19. If this Court accepts these courts' position on the unavailability of a futility exception to the FOIA, summary judgment in the DoD OIG's favor is

required on that basis alone.

If the Court nevertheless accepts the existence of a FOIA futility exception, Plaintiff is not entitled to the benefit of it here.[3] Exhaustion is futile only if a plaintiff can show that administrative appeals would not further "the purposes of exhaustion, namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review." *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (cleaned up) (quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993)). "Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990); *see also Hidalgo*, 344 F.3d at 1260. Thus, futility requires a showing that an agency will not give administrative appeals "their due consideration." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 373 (D.C. Cir. 2020); *see also Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 336 n.10 (D.D.C. 2018), *aff'd*, 943 F.3d 959 (D.C. Cir. 2019). There must be a "demonstrat[ion] that an adverse decision is a certainty." *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 214 (4th Cir. 1997); *see also Morris v. State of Maryland*, 908 F.2d 967, 1990 WL 101396, at *1, *2, *5 (4th Cir. 1990) (unpublished) (similar); *Brown v. Resol. Tr. Corp.*, 30 F.3d 128, 1994 WL 384727, at *1 (4th Cir. 1994) (unpublished) (similar); *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 134 F. Supp. 3d 437, 439 (D.D.C. 2015) (futility exception applies only if 'following the administrative remedy would be futile because of certainty of an adverse decision'" (quoting *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986)));

---

[3] Plaintiff does not dispute that the doctrine of constructive exhaustion is inapplicable here. *Compare* Summ. J. Mem. (Dkt. No. 51) at 10 n.1, *with* Opp'n (Dkt. No. 53) at 17–19.

*Rosenberg v. U.S. Dep't of Immigr. & Customs Enf't,* 956 F. Supp. 2d 32, 41 (D.D.C. 2013) (same). That is, the agency can be deemed to have "already addressed" the FOIA claim "at a second level of review" when none has occurred. *Khine*, 334 F. Supp. 3d at 336 n.10.

Plaintiff falls well short of meeting this extraordinarily high standard and exception to the rule. There is not a shred of evidence that any FOIA appellate decisionmaker at the DoD OIG would have merely rubber stamped the agency's initial responses to any of Plaintiff's three FOIA requests such that adverse appellate decisions were a foregone conclusion. Contrary to Plaintiff's assertion (for which he cites nothing in support),[4] he did not speak with any "senior officials within the FOIA office" at the DoD OIG regarding his three requests, Opp'n (Dkt. No. 53) at 17, much less the "final decisionmaker" with respect to any administrative appeals, *Volvo*, 118 F.3d at 214 & n.12. Regardless of how many interactions Plaintiff had with FOIA employees at the DoD OIG, those interactions were limited to personnel responsible for handling *initial* responses to his FOIA requests—*not* administrative appeals involving those requests. Simply put, "Plaintiff's construction of the futility exception would mean no person who was ever denied any documents would ever be required to appeal the [initial] decision administratively." *Hi-Tech Bed Sys. Corp. v. U.S. Gen. Servs. Admin.*, No. 11-CV-293-SWS, 2012 WL 12871622, at *9 (D. Wyo. Mar. 8, 2012). "Such a result would subvert the purposes of exhaustion . . . ." *Id.*

*Armstrong v. Bush*, 807 F. Supp. 816 (D.D.C. 1992) does not command a different conclusion. *See* Opp'n (Dkt. No. 53) at 17–18. There, the court found futility because the defendant agency "ha[d] not given the [p]laintiffs any of the information sought" in their FOIA

---

[4] "Conclusory statements by counsel, without supporting admissible evidence, are not enough to survive summary judgment." *Pridemore v. USAir, Inc.*, 98 F.3d 1335, 1996 WL 576005, at *3 (4th Cir. 1996) (unpublished); *see also Couch v. Jabe*, 679 F.3d 197, 203 n.4 (4th Cir. 2012) (similar).

request, maintaining that the information was not even subject to the FOIA. *Armstrong*, 807 F. Supp. at 819. That categorical bar to disclosure caused the court to find that exhaustion was futile. *See id.*; *see also Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 227 n.2 (D.D.C. 2012) (supporting this reading of *Armstrong*). No such categorical bar to disclosure has occurred here as the DoD OIG has produced responsive records to all three FOIA requests. *See, e.g.*, Dorgan Decl. (Dkt. No. 51-1) ¶¶ 46–48; *see also Freedom Watch*, 895 F. Supp. 2d at 227 n.2.

Plaintiff also puts forward the remarkable contention that because the DoD OIG "has now submitted to the Court the detailed factual record" that would have been compiled at the administrative level (i.e., presented a defense to Plaintiff's FOIA claim in this Court), exhaustion is futile. Opp'n (Dkt. No. 53) at 17. This factual record does not excuse Plaintiff from exhaustion. The DoD OIG (or any other agency in a FOIA case) cannot be put in a "Catch-22" where it is precluded from zealously defending itself in a FOIA action, because it can only contest lack of exhaustion/futility or the adequacy of its search, but not both. In other words, whenever a plaintiff prematurely runs to court in a FOIA case, an agency will always (prudently) compile a factual record to defend its searches for responsive records, while maintaining its exhaustion arguments. The doctrine of exhaustion would be "*eviscerated*" if this were enough to show futility. *Morris*, 908 F.2d 967, 1990 WL 101396, at *5 (emphasis added).

Left to grasp at straws, Plaintiff argues that the mere production of responsive records in litigation by an agency moots the administrative appeal requirement, relying on *Bayala v. United States Department of Homeland Security*, 827 F.3d 31 (D.C. Cir. 2016). Opp'n (Dkt. No. 53) at 18–19. According to Plaintiff, exhaustion became moot once the OSD/JS produced the referred records after this FOIA case commenced. *Id.* Plaintiff is wrong on both the facts and the law.

On the factual side, the *DoD OIG* indisputably *finished* its production of responsive records

10

to the third FOIA request on February 18, 2021—*before* the commencement of this FOIA action. In its letter accompanying that production, the DoD OIG explicitly and unambiguously stated that it had "*completed*" its "processing of [Plaintiff's third FOIA] request" and would "administratively close it in [the agency's] office." Dorgan Decl. (Dkt. No. 51-1) at Ex. J (emphasis added). That letter also explained that it had "determined that the Office of the Secretary of Defense/Joint Staff (OSD/JS) is the release authority for documents that may be responsive to [his third FOIA] request" and that those documents had been referred to the OSD/JS "for processing *and direct response*" to him. *Id.* (emphasis added). The referral of these documents to the OSD/JS did not mean that the DoD OIG's response to the third FOIA request was incomplete or unfinished whatsoever.

The OSD/JS finished processing the referred documents after the start of this FOIA case on or about May 26, 2021. Opp'n at Ex. 2 (Dkt. No 53.2). And then the *OSD/JS—not* the DoD OIG—directly responded to Plaintiff regarding the "referral" of records to this particular DoD Component. *Id.* The OSD/JS explained that administrative "[a]ppellate rights are moot" with respect to the third FOIA request because it was "in litigation." *Id.* So sure, if Plaintiff wanted to challenge this one minor aspect of his third FOIA request—the OSD/JS's processing and production of the *referred* records—in this Court, he may not have needed to exhaust his administrative remedies first. *See, e.g.*, *Bd. of Sup'rs of Prince William County v. DHS*, No. 11-CV-819-JCC/JFA, 2012 WL 695889, at *4 n.3 (E.D. Va. Mar. 1, 2012) ("A plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request-and thus properly seek judicial review regarding that request-and yet not have exhausted her remedies with respect to another aspect of a FOIA request." (alteration omitted) (quoting *Dettmann v. DOJ*, 802 F.2d 1472, 1477 (D.C. Cir. 1986))). But there is no such pending challenge here as the OSD/JS has

11

been dismissed with prejudice from this FOIA case, and the case is now solely about the *DoD OIG*'s productions in response to the three FOIA requests (and in particular, the third FOIA request). *See* Joint Stipulation of Partial Dismissal (Dkt. No. 43). Nothing said by the OSD/JS could possibly be imputed to the DoD OIG, let alone be construed as some waiver of the DoD OIG's exhaustion arguments or serve as a basis to argue that an administrative appeal of other aspects of Plaintiff's FOIA request to the DoD OIG would have been futile.

Plaintiff is also wrong on the law as *Bayala* is inapposite. There, the plaintiff received an initial response to his FOIA request, which included some withholding of responsive documents and explanations for those withholdings. 827 F.3d at 390, 391. The plaintiff proceeded to sue in court rather than administratively appeal that response. *Id.* Then, during the course of litigation, and before the defendant agency had responded to the complaint, the agency voluntarily released certain documents that it had previously withheld and provided *different* explanations for why it continued to withhold other documents. *Id.* at 390, 391–92. The D.C. Circuit explained that exhaustion became moot once the agency "abandoned" its initial response by releasing certain documents it had previously withheld and crafting new explanations for continued withholding of other documents. *Id.* at 393. As the D.C. Circuit explained:

> The [agency]'s argument that exhaustion of its original administrative decision was required, however, became moot once it chose to abandon its previous determination, make a sua sponte disclosure of documents, and craft a new, five-page-long explanation for this different withholding decision in the district court, the content and specificity of which went far beyond the original, perfunctory administrative decision. That new FOIA determination rendered the propriety of the original agency decision—and any administrative challenges to it—an entirely academic question.

*Id.* (footnote omitted).

The undisputed summary judgment record does not reveal any such shifting course of conduct here. The DoD OIG has never abandoned or departed from its administrative responses

by releasing responsive records that it previously withheld during the course of this litigation. The only records produced during the course of litigation were the *records referred* to the OSD/JS.

In sum, Plaintiff's failure to exhaust his administrative remedies requires entry of summary judgment in favor of the DoD OIG.

### III. PLAINTIFF HAS NOT UNDERMINED THE ADEQUACY AND REASONABLENESS OF THE DOD OIG'S SEARCH FOR RESPONSIVE RECORDS TO HIS THIRD FOIA REQUEST.

Alternatively, the DoD OIG conducted a reasonable search for and produced records responsive to Plaintiff's three FOIA requests.[5] Plaintiff does not dispute that the DoD OIG's searches for records responsive to his first two FOIA requests were adequate and reasonable. For these two requests, Plaintiff does not quarrel over: the offices within the DoD OIG tasked to search for responsive records; the databases that were queried; or the search terms used. The gravamen of Plaintiff's attack is on the DoD OIG's search for records responsive to his third FOIA request. *See* Opp'n (Dkt. No. 53) at 7 (highlighting his third FOIA request in his proffered fact no. 21); *id.* at 7–10 (asserting that documents responsive to this request were not produced in proffered fact nos. 22–35); *id.* at 11 (taking issue with search term used for this request in proffered fact no. 38). This search was not deficient. Plaintiff simply misunderstands the law.

"[T]he FOIA does not require a perfect search, only a reasonable one." *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 362 (4th Cir. 2009) (citing *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)). "In judging the adequacy of an agency search for documents the *relevant question is not whether every single potentially responsive document has been unearthed*, but whether the agency has demonstrated that it has conducted a search reasonably calculated to

---

[5] Plaintiff has not challenged the DoD OIG's withholding (redaction) of certain information from its productions of responsive records to Plaintiff's three FOIA requests. *Compare* Summ. J. Mem. (Dkt. No. 51) at 15–23, with Opp'n (Dkt. No. 53) at 13–16.

13

uncover all relevant documents." *Id.* (emphasis added) (quoting *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994)). In other words, "the adequacy of a FOIA search is generally determined *not by the fruits of the search*, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (emphasis added) (citing *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

Here, Plaintiff violates this well-settled principle by conducting the analysis backwards. Rather than analyzing the actual search in response to the third FOIA request as the law requires, he relies upon what he subjectively believes the *fruits* of a search should have been to attack its adequacy and reasonableness. *See, e.g.*, Opp'n (Dkt. No. 53) at 10 (¶¶ 34, 35); *see also Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 104 (D.D.C. 2017) ("Although Plaintiff styles his argument as one relating to the inadequacy of the search, what he really protests is Defendant's failure to locate certain documents."). He lambasts the DoD OIG for failing to find certain responsive records that are listed in the Fact Book.[6] *See id.* at 13 ("Defendant cannot deny that responsive documents exist in the file locations detailed in the Fact Book . . . ."); *id.* at 15 ("DoD OIG's own Fact Book is definitive proof that overlooked records exist."). Nevertheless, as Plaintiff admits, the DoD OIG's search *did* yield other responsive records that are identified in the Fact Book. *Id.* at 9 (¶¶ 31–33). And that is because all records (including the responsive ones) catalogued in the Fact Book were in fact captured by the DoD OIG's search in response to the third FOIA request.[7] *See* Supp'l Dorgan Decl. ¶ 4.

---

[6] To be clear, Plaintiff's third FOIA request had two parts: part (a) and part (b). *See* Dorgan Decl. (Dkt. No. 51-1) at Ex. G. Plaintiff does not contend that the responsive record to part (b) of the request was not provided.

[7] For this reason alone, none of Plaintiff's cases—cited to insinuate that the DoD OIG buried its head in the sand and ignored repositories of potentially responsive records—are persuasive. *See* Opp'n (Dkt. No. 53) at 14–16.

14

So at most, Plaintiff's challenge to the DoD OIG's last search (for Plaintiff's third FOIA request) is that certain records he deems responsive from the Fact Book have not been produced. Opp'n (Dkt. No. 53) at 9 (¶¶ 34–35). That does not undermine the adequacy and reasonableness of the search. *See Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 408 (D.C. Cir. 2017) ("[T]o the extent the Reporters Committee argues that the OIG report calls the adequacy of the search into question because it refers to a handful of Timberline-related documents that the search apparently failed to turn up, the adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of its methods.' That a few responsive documents may have slipped through the cracks does not, without more, call into question the search's overall adequacy." (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013))); *Iturralde*, 315 F.3d at 315 ("reasonable and thorough search may have missed" particular documents (citing cases)); *Spurling v. U.S. DOJ*, 425 F. Supp. 3d 1, 12 (D.D.C. 2019) ("An agency need not demonstrate that it located every document that the FOIA requester expected the agency to find, or that it searched every record system, or that its search was exhaustive[.]" (cleaned up)); *Allnutt v. U.S. DOJ*, 99 F. Supp. 2d 673, 676 (D. Md. 2000), *aff'd*, 8 F. App'x 225 (4th Cir. 2001). Plaintiff has only shown that, perhaps, the search was not perfect. *Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998). "Perfection, however, is not the standard, and the [agency's] failure to locate . . . responsive documents does not defeat [the agency's] showing—which is not otherwise challenged—that its search was adequate."[8] *Id.*

---

[8] Plaintiff makes a passing and conclusory suggestion that the DoD OIG's search in response to the third FOIA request should have used more search terms. *See* Opp'n (Dkt. No. 53) at 11 (¶ 38(a)). But Plaintiff has not explained what additional search terms were necessary given that the search term used in D-CATS by the Investigations of Senior Officials ("ISO") Directorate returned "all records involving JEDI . . . ." Dorgan Decl. (Dkt. No. 51-1) ¶ 40; *see also Protect Democracy Project, Inc. v. U.S. Dep't of Energy*, 330 F. Supp. 3d 515, 525 (D.D.C. 2018) ("Even a single term can be adequate in the context of a well-designed search." (citing cases)); *Jud. Watch,*

15

Plaintiff also makes a mountain out of a molehill that the JEDI Report states that the DoD OIG examined approximately 31 gigabytes of emails and 1 gigabyte of documents to generate the report. *See* Opp'n at 7 (¶ 20); *id.* at 11 (¶ 38); *id.* at 16. But that fact is a red herring. The vast majority of the data relevant to the JEDI Report is simply not responsive to the third FOIA request. The records Plaintiff requested represent a fraction of what was used to compile the JEDI Report. *Compare* Opp'n at Ex. 1 (Dkt. No. 53-1) (JEDI Report is over 300 pages), *with id.* (Dkt. No. 53) at 7–8 (¶ 22), *and id.* at 10 n.3 (identifying a handful of pages from the JEDI Report that is allegedly relevant to the third FOIA request). The DoD OIG did not have to search all of this data when much of it was unlikely to turn up responsive records. *Wright v. Admin. for Child. & Fams.*, No. 15-CV-218-BAH, 2016 WL 5922293, at *6 (D.D.C. Oct. 11, 2016) ("[C]ourts have found searches adequate where *no search* was performed of entities 'unlikely' to possess responsive documents." (citing cases) (quoting *All Party Parliamentary Grp. on Extraordinary Rendition v. U.S. Dep't of Def.*, 134 F. Supp. 3d 201, 206 (D.D.C. 2015))); *Truthout v. DOJ*, 968 F. Supp. 2d 32, 37 (D.D.C. 2013) (similar).

The DoD OIG only had to conduct a reasonable search of record systems that were likely

---

*Inc. v. U.S. Dep't of State*, No. 12-CV-893-JDB, 2017 WL 3913212, at *9 (D.D.C. Sept. 6, 2017) (explaining that a plaintiff cannot dictate the search terms for a FOIA request and that agencies have discretion in crafting search terms).

He takes the same tact in faulting the DoD OIG for not identifying the specific number of records that were returned by the ISO Directorate's search of D-CATS. *See* Opp'n (Dkt. No. 53) at 11 (¶ 38(b)). But that number is not probative of the reasonableness of the search. *See Iturralde*, 315 F.3d at 315 (reasonableness not measured "by the fruits of the search, but by the appropriateness of the methods used to carry out the search"); *Hall & Assocs. v. U.S. EPA*, 83 F. Supp. 3d 92, 99 (D.D.C. 2015) (even small number of responsive records is not indicative of an inadequate search); *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 539 F. Supp. 2d 225, 226–27 (D.D.C. 2008) ("The measure of a search's adequacy is not the number of documents produced, but whether defendant can 'demonstrate the it has conducted a search reasonably calculated to uncover all relevant documents.'" (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984))).

to possess the requested information, i.e., the record systems containing the subset of the data referenced in the JEDI Report that were likely to have responsive records. *Spurling*, 425 F. Supp. 3d at 12 ("An agency need not demonstrate . . . that it searched every record system, or that its search was exhaustive[.]" (cleaned up)); *Allnutt*, 99 F. Supp. 2d at 676 ("[T]he agency need not examine in detail every document within its control." (citation omitted)). That is what it did. The agency tasked the Office of the Deputy Inspector General for Administrative Investigations, which "promotes public confidence in the integrity and accountability of DoD leadership by investigating allegations of misconduct by senior DoD officials under the Investigations of Senior Officials ('ISO') Directorate," to search for responsive records. Dorgan Decl. (Dkt. No. 51-1) ¶¶ 7(c), 37–40. The ISO Directorate *broadly* searched for "*all records involving JEDI*" and then "further searched within . . . [those records] to produce the potentially responsive records." *Id.* ¶ 40 (emphasis added).

Other than speculation, i.e., that searching all the data referenced in the JEDI Report could potentially yield a greater number of responsive documents (which it likely would not[9]), there is no reason why this was an inadequate and unreasonable search. *See Iturralde*, 315 F.3d at 316 ("mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them" (alteration omitted) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991))); *Spurling*, 425 F. Supp. 3d at 12 ("An agency need not demonstrate that it located every document that the FOIA requester expected the agency to find, or that it searched every record system, or that its search was exhaustive[.]" (cleaned up)); *Allnutt*, 99 F. Supp. 2d at 676 ("The agency is not charged with unearthing every potentially

---

[9] As Plaintiff noted, the DoD OIG FOIA/PA Office maintains a FOIA Reading Room on its website that includes documents related to the JEDI Report. *See* Opp'n (Dkt. No. 53) at 8 n.1.

17

responsive document; rather, it must conduct a search reasonably calculated to find all relevant documents." (citation omitted)). In sum, the DoD OIG conducted adequate and reasonable searches for records responsive to all of Plaintiff's FOIA requests. Summary judgment is, therefore, proper.

### IV. DISCOVERY IS UNWARRANTED IF SUMMARY JUDGMENT IS NOT GRANTED.

Without providing any justification, Plaintiff—clearly looking for a way to prolong this litigation indefinitely even though the DoD OIG has completed its production on Plaintiff's third FOIA request—seeks discovery "to get to the bottom of what remains to be produced." Opp'n (Dkt. No. 53) at 16. But "discovery is not favored in lawsuits under the FOIA." *Jud. Watch, Inc. v. U.S. DOJ*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002). "When an agency's declarations are insufficient to establish an adequate search, courts 'generally will request that an agency supplement its supporting declarations' instead of ordering discovery." *Cole v. Copan*, 485 F. Supp. 3d 243, 254 (D.D.C. 2020) (quoting *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013)). Courts may also remand the case to the agency to conduct additional searches for responsive records. *Asarco, Inc. v. U.S. EPA*, No. 08-CV-1332-EGS-JMF, 2009 WL 1138830, at *2 (D.D.C. Apr. 28, 2009) ("Discovery in a FOIA case . . . is not a punishment for a deficient agency performance. The remedy for such a deficiency is a remand to the agency to complete an adequate search, not discovery."); *see also Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. 17-CV-1208-BAH, 2021 WL 918204, at *9–10, *16–17 (D.D.C. Mar. 9, 2021); *Watkins L. & Advoc., PLLC v. U.S. Dep't of Veterans Affs.*, 412 F. Supp. 3d 98, 122–23 (D.D.C. 2019); *Sea Shepherd Conservation Soc'y v. IRS*, 89 F. Supp. 3d 81, 103–04 (D.D.C. 2015). "Limited discovery is typically only permitted when the agency has acted in bad faith, such as in cases where there has been extreme delay or evidence of wrongdoing." *Cole*, 485 F. Supp. 3d at 254 (citing

*Landmark*, 959 F. Supp. 2d at 184).

Here, Plaintiff has not demonstrated any bad faith on the part of the DoD OIG. Conducting an inadequate search is not tantamount to bad-faith conduct. If the Court deems the DoD OIG's search in response to the third FOIA request defective, the appropriate remedy is to deny summary judgment and remand the case to the agency to conduct additional searches of the Fact Book (notwithstanding it already and effectively has) and the data referenced in the JEDI Report for records responsive to the request. No discovery is needed "to get to the bottom of what remains to be produced" because what remains for production are allegedly responsive documents that have not been produced from these repositories. In other words, discovery is not needed to learn that the Fact Book and the data referenced in the JEDI Report should be further searched. *See Asarco*, 2009 WL 1138830, at *2 (denying discovery where the plaintiff essentially demanded "discovery in the very document in which it trumpets that the record is already so clear that the government's motion for summary judgment must be defeated"). In sum, should the Court find that the DoD OIG did not conduct an adequate and reasonable search for responsive records to the third FOIA request, additional searches should be ordered, not discovery.

V. **CONCLUSION**

This is not a complex case. Plaintiff undisputedly did not administratively appeal the DoD OIG's initial responses to any of his FOIA requests. Summary judgment in favor of the DoD OIG is proper because he has not exhausted his administrative remedies. And in arguing that the DoD OIG's search in response to the third FOIA request was inadequate, Plaintiff focuses on the fruits of the search rather than the search itself, which is legally irrelevant, and so the adequacy and reasonableness of that search cannot be doubted. The DoD OIG is also entitled to summary judgment on this alternative ground. For the foregoing reasons, as well as those in the initial

summary judgment memorandum, the DoD OIG respectfully requests that this Court enter summary judgment in its favor as to Count I of the Amended Complaint.[10]

Dated: March 7, 2022

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
HUGHAM CHAN
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel:   (703) 299-3743
Fax:   (703) 299-3983
Email: hugham.chan@usdoj.gov

*Counsel for Defendant Department of Defense Office of Inspector General*

*Of Counsel*:   Erin Mellen
Associate General Counsel
Department of Defense Office of Inspector General

---

[10] At a minimum, summary judgment should be entered in favor of the DoD OIG on Count I as to Plaintiff's first and second FOIA requests as the adequacy and reasonableness of those searches have not been genuinely disputed.