**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **HON. JOSEPH E. SCHMITZ,** )<br>    **Plaintiff,** )<br>  )<br>    v. )<br>  )<br>**U.S. DEPARTMENT OF DEFENSE** )<br>**OFFICE OF INSPECTOR GENERAL** )<br>    **Defendant.** ) | Civil Action No. 1:21-cv-415 |

## MEMORANDUM OPINION

At issue in this Freedom of Information Act ("FOIA") case is a motion for summary judgment filed by defendant, the United States Department of Defense Office of Inspector General (hereinafter referred to as "DoD OIG"). Defendant DoD OIG argues that summary judgment is appropriate for two reasons: (i) plaintiff failed to exhaust his administrative remedies and (ii) defendant conducted reasonable searches that fully complied with FOIA's requirements. This motion has been fully briefed, and oral argument on the motion was held telephonically on May 6, 2022. The motion is now ripe for disposition, and for the reasons stated below, defendant's motion for summary judgment must be granted.

### I.

A grant of summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Rule 56(A), Fed. R. Civ. P. Because the summary judgment analysis requires examination of the undisputed record facts, Local Rule 56(B) directs a party seeking summary judgment to include in the summary judgment submission a specifically captioned section listing in enumerated paragraphs the material facts as to which the moving party contends no genuine dispute exists and to provide citations to the factual record supporting the listed facts. Local Rule

56(B) further instructs a party opposing summary judgment to address each enumerated undisputed fact and to state whether the fact is disputed or admitted and if disputed, to provide citations to admissible evidence in the record supporting the claim of a factual dispute. The parties have substantially complied with Local Rule 56(B), and thus the following are the undisputed material facts derived from the parties' submissions and the factual record.

1. On April 15, 2020, DoD OIG released a publicly available report on the Joint Enterprise Defense Infrastructure ("JEDI") Cloud Procurement (hereinafter referred to as the "JEDI Cloud Report").[1] The JEDI Cloud Procurement is a government contract bidding process which allows DoD organizations to obtain cloud computing services from private contractors.

2. The JEDI Cloud Report details the DoD OIG's investigation into allegations that former DoD officials engaged in unethical misconduct related to the JEDI procurement process.

3. According to the JEDI Cloud Report, the DoD OIG "reviewed [i] the DoD's decision to award the JEDI Cloud contract to [Microsoft]; [ii] the development of the requirements in the Request for Proposals; [iii] the DoD's source selection process; [iv] the disclosures of source selection and proprietary information after contract award; and [v] whether the JEDI Cloud source selection was influenced by outside pressure." *Id.* In particular, the DoD OIG investigated allegations that DoD officials had financial interests that conflicted with duties that these officials had related to the JEDI Cloud procurement process. *Id.*

4. The JEDI Report cites various supporting documents, including interviews of former Secretary of Defense James N. Mattis, emails between DoD officials such as Sally Donnelly and Anthony DeMartino, and other business records relating to the JEDI Cloud procurement process.

5. On June 3, 2020, Plaintiff Honorable Joseph E. Schmitz, a former Inspector General for the Department of Defense, filed his first FOIA request to the DoD OIG. This first FOIA request sought:

> all information related to the Case Investigative File ("Case File") or Case Files for the investigation(s) and report posted April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement," including the involvement of the Defense Criminal Investigative Service ("DCIS"), DCIS investigators, or any other Department of Defense Office

---

[1] *See* JEDI Cloud Report, *available at* https://www.dodig.mil/reports.html/Article/2150471/report-on-the-joint-enterprisedefense-infrastructure-jedi-cloud-procurement-do/ (last accessed May 9, 2022).

      of Inspector General investigators.
      Amended Complaint, Dkt. 13-A.

6. Throughout June 2020, plaintiff and the DoD OIG corresponded about the scope of plaintiff's first FOIA request. *See* Declaration of Mark Dorgan (hereinafter "Dorgan Decl."), Dkt. 51-A, ¶ 12–17. In the course of that correspondence, plaintiff narrowed the scope of his first FOIA request to "the Defense Criminal Investigative Service (DCIS) case file pertaining to the April 13, 2020, 'Report on the Joint Enterprise Defense Infrastructure Cloud Procurement.'" Dorgan Decl. ¶ 17; *see also* Am. Compl., Dkt. 13-A, ¶ 28.[2]

7. On August 14, 2020, the DoD OIG responded to plaintiff's first FOIA request by producing a 22-page document titled "Report of Investigation," certain portions of which had been redacted due to FOIA exclusions. Dorgan Decl. ¶ 22. The DoD OIG's August 14, 2020 letter identified a statutory basis for each of the redactions[3] in the document produced and advised plaintiff "[i]f you consider this an adverse determination, you may submit an appeal. Your appeal, if any, must be postmarked within 90 days of the date of this letter, clearly identify the determination that you would like to appeal, and reference to the FOIA case number above." Dkt. 51-1 at 28-29.

8. Plaintiff did not file an administrative appeal of DoD OIG's August 14, 2020 response to plaintiff's first FOIA request, including any administrative appeal of any redactions identified by DoD OIG in its August 14, 2020 response.

9. After the DoD OIG responded to plaintiff's first FOIA request, plaintiff submitted a second FOIA request on August 18, 2020. This second request sought

> (a) any and all DCIS "Information Reports" or other DCIS "reports" – other than the DCIS [Report of Investigation] produced on August 14, 2020 – related to the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement"; and (b) any and all reports prepared by other investigators within the DoD Office of Inspector General, e.g., "senior official" or "AI" investigators, related to the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement."

Am. Compl. at Ex. B. (Dkt.13-2).

10. On October 30, 2020 the DoD OIG responded to plaintiff's second FOIA request and

---

[2] The Defense Criminal Investigative Service ("DCIS"), which compiled the case file for the JEDI Cloud Report, is a component of the DoD OIG.

[3] FOIA identifies categories of information not subject to disclosure, including personnel and medical files, discussion of an agency's internal deliberative process, and commercially sensitive information obtained from third parties. *See* 5 U.S.C. § 552(b)(1-9).

produced a 7-page document with certain redactions noted. The DoD OIG's October 30, 2020 response letter provided a statutory basis for each redaction. The October 30, 2020 response also advised plaintiff that "[t]his is an interim response" to his FOIA request. Dkt. 51-1 at 37. The October 30, 2020 response letter also advised plaintiff that "If you consider this an adverse determination, you may submit an appeal. Your appeal, if any, must be postmarked within 90 days of the date of this letter." *Id.* Plaintiff did not file an appeal of DoD OIG's October 30, 2020 response to plaintiff's second FOIA request.

11. On November 20, 2020, the DoD OIG supplemented its earlier response to plaintiff's second FOIA request and produced a 22-page document titled "Information Report" with certain redactions noted. Dkt. 51-1 at 40; *see also* Am. Compl. at ¶ 29. (Dkt.13). Unlike the October 30 response, the November 20, 2020 response did not purport to be an interim response, and advised plaintiff "If you consider this an adverse determination, you may submit an appeal. Your appeal, if any, must be postmarked within 90 days of the date of this letter." *Id.*

12. Plaintiff never filed an administrative appeal of DoD OIG's October 30, 2020 or November 20, 2020 responses to plaintiff's second FOIA request.

13. After DoD OIG responded to plaintiff's second FOIA request, plaintiff submitted a third FOIA request to DoD OIG on December 8, 2020. This request sought

> (a) any and all documents or working papers related to the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement," concerning Secretary James N. Mattis, Ms. Sally B. Donnelly, and Mr. Anthony DeMartino, including but not limited to interview transcripts or notes, emails, text messages, communications, memoranda, and any other documents; and (b) the transmittal letter for the April 13, 2020, "Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement," reportedly signed by Glenn Fine.

Am. Compl. (Dkt. 13) Ex. C.

14. On January 26, 2021, the DoD OIG responded to plaintiff's third FOIA request and produced 74 pages of interview transcripts with certain redactions noted. DoD OIG's January 26 response explained that the letter was "an interim response" to plaintiff's third FOIA request and advised plaintiff "if you consider this an adverse determination, you may submit an appeal now, or submit an all-inclusive appeal upon receiving the complete response. Your appeal, if any, must be postmarked within 90 days of the date of this letter…" Dkt. 51-1 at 53.

15. On February 18, 2021, the DoD OIG supplemented its response to Plaintiff's third FOIA request and produced an additional 89 pages of documents, including interview transcripts, with certain redactions noted. The DoD OIG explained that "[a]s this constitutes our final response, we have completed our processing of your request and will administratively close it in our office." The February 18 letter further advised plaintiff

    that "[i]f you consider this an adverse determination, you may submit an appeal. Your appeal, if any, must be postmarked within 90 days of the date of this letter, clearly identify the determination that you would like to appeal, and reference to the FOIA case number above." Dkt. 51-1 at 56–57.

16. In the February 18, 2021 response, the DoD OIG also advised plaintiff that a portion of responsive documents had been referred to a different component within the DoD, the Office of the Secretary of Defense and Joint Staff (hereinafter referred to as "OSD/JS") and that OSD/JS "is the release authority for documents that may be responsive" to plaintiff's third FOIA request. Dkt. 51-1 at 56.[4] The February 18, 2021 response explained that OSD/JS would be responsible for communicating with plaintiff concerning those documents. Plaintiff corresponded with OSD/JS regarding these documents, and on May 27, 2021, OSD/JS wrote to plaintiff concerning the documents referred to OSD/JS by DoD OIG, and produced documents to the plaintiff with certain redactions noted.

17. Plaintiff has never filed an administrative appeal of DoD OIG's January 26, 2021 or February 18, 2021 responses to plaintiff's third FOIA request.

18. On April 2, 2021, plaintiff filed the instant FOIA lawsuit, naming both the DoD OIG and the DoD (standing in for OSD/JS) as defendants and asserting that the DoD OIG had failed to produce responsive records to plaintiff's three FOIA requests. On June 14, 2021, plaintiff amended his complaint to assert a second FOIA count against the DoD, asserting that the OSD/JS had failed to produce responsive records to a fourth FOIA request submitted after this lawsuit was initiated.

19. After plaintiff filed his suit, OSD/JS produced to plaintiff several redacted documents responsive to plaintiff's third FOIA request.

20. On November 23, 2021, the parties filed a Joint Stipulation of Partial Dismissal (Dkt. 43), dismissing defendant DoD from the case and resolving defendant's suit concerning OSD/JS's handling of plaintiff's FOIA requests. DoD OIG is the sole remaining defendant in this suit.

21. DoD OIG maintains a publicly available online document reading room where documents, with some redaction, related to the JEDI Cloud procurement process can be accessed.[5] This reading room contains an index of documents cited by DoD OIG as exhibits to the JEDI Report. One of the contentions raised in plaintiff's lawsuit is that DoD OIG provided plaintiff with only some, but not all, of the documents listed in this index, even though, as plaintiff alleges, all of the documents were responsive to plaintiff's FOIA requests.

---

[4] Department of Defense regulations create a "decentralized system for responding to FOIA requests." 32 C.F.R. § 286.3. This system requires that FOIA requests be directed to a specific DoD component, e.g. DoD OIG, and not DoD as a whole. *See* 32 C.F.R. §§286.1, 286.2.

[5] *See* https://www.dodig.mil/FOIA/JEDI-documents, last accessed May 12, 2022.

5

22. Plaintiff has not filed administrative appeals of any of the FOIA responses by DoD OIG which plaintiff claims were adverse determinations.

23. On February 15, 2022, defendant DoD OIG filed a motion for summary judgment. *See* Dkt. 50. In support of its motion for summary judgment, defendant included a declaration signed by Mark Dorgan, Director of DoD OIG's Freedom of Information Act, Privacy and Civil Liberties Office. The Dorgan Declaration details the steps DoD OIG took to respond to plaintiff's three FOIA requests and explains the search terms used. The Dorgan Declaration provides an explanation for how DoD OIG conducted its document search and the reasons DoD OIG searched the databases it chose to search. *See* Dkt. 51-1.

## II.

The summary judgment standard is too well settled to require extensive elaboration. Summary judgment is appropriate only when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c) (explaining that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). To serve as a bar to summary judgment, facts must be "material," which means that the disputed facts "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Particularly relevant for this case, the Fourth Circuit has explained that "FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified." *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004).

## III.

This action arises under the Freedom of Information Act, codified at 5 U.S.C. § 552. As

the Fourth Circuit has explained, FOIA "was enacted to maintain an open government and to ensure the existence of an informed citizenry 'to check against corruption and to hold the governors accountable to the governed.'" *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1245 (4th Cir. 1994) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). FOIA "provides that, subject to certain enumerated exemptions for classified documents, agency personnel and medical files, confidential financial information, and the like, 5 U.S.C. § 552(b)(1)-(9), federal agencies generally must make their internal records available to the public upon request." *Coleman v. Drug Enf't Admin.*, 714 F.3d 816, 818 (4th Cir. 2013).

Defendant DoD OIG argues that summary judgment should be entered in defendant's favor for two reasons. First, defendant argues that plaintiff failed, as required by statute, to exhaust his administrative remedies before filing this lawsuit. Second, defendant argues that the undisputed factual record shows that defendant conducted a reasonable search in response to plaintiff's FOIA requests and that no violation of FOIA therefore occurred. Defendant is correct that plaintiff's failure to exhaust compels a grant of summary judgment, and it is accordingly unnecessary to reach or decide defendant's second argument concerning the reasonableness of defendant's search.

The question presented by defendant's exhaustion argument requires a construction of FOIA, and such analysis properly begins with the text of the statute, which explicitly includes an exhaustion requirement. Thus, FOIA in relevant part requires that in the event of an adverse determination of a FOIA request by a government agency, the agency must notify the requestor of the right "to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination." 5 U.S.C. § 552(a)(6)(A)(i). FOIA also provides that agencies must "make a determination with respect to

any appeal within twenty days … after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii). Thus, FOIA clearly requires that an administrative appeal must occur prior to judicial review of the agency's determination, as FOIA instructs agencies that "[i]f on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination …." *Id.* The Fourth Circuit has confirmed this reading of the statute, noting that "[b]efore commencing litigation, a requester must ordinarily exhaust administrative remedies by appealing an issue through the FOIA administrative process following an initial adverse determination by the agency." *Coleman*, 714 F.3d at 820. Thus, FOIA plainly requires that parties receiving an adverse determination in a FOIA request pursue an administrative appeal of that determination before seeking judicial review of the agency's response to the FOIA request.

It is undisputed that plaintiff has failed to exhaust administrative remedies relating to any of his three FOIA requests, as required by the statute. This does not end the analysis, however, as plaintiff nonetheless maintains that the exhaustion doctrine is inapplicable to this case for three reasons. First, plaintiff argues that administrative exhaustion is a prudential requirement, but not a jurisdictional one, which courts should decline to apply when application of the exhaustion requirement would frustrate the purposes of FOIA. Second, plaintiff argues that administrative exhaustion was not required in this case because exhaustion was futile where an appeal was certain to result in an adverse decision from DoD's Inspector General. Third, plaintiff argues that the production of additional documents in the course of litigation, as plaintiff alleges occurred here, moots the exhaustion requirement. As explained below, all three arguments fail and summary judgment must be entered in favor of defendants.

Plaintiff's first argument is that because the exhaustion requirement is prudential, not

jurisdictional, the requirement is inapplicable in this case because it would somehow frustrate the purpose of FOIA. This argument is entirely unpersuasive; it proves too much. Every denial of a FOIA request, from the requestor's point of view, is a frustration of the purposes of FOIA and hence, by this argument, exhaustion would never be required.

Although plaintiff corresponded with DoD OIG as the agency processed plaintiff's FOIA requests, it is undisputed that plaintiff never filed an appeal of any of DoD OIG's determinations and thus never pursued the administrative appeals contemplated by the statute. As the District of Columbia Circuit has noted, FOIA's exhaustion requirement serves several purposes, including "preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, [and] compiling a record which is adequate for judicial review." *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (internal quotations and citations omitted). A waiver of the exhaustion requirement is particularly inappropriate in this case, because plaintiff's primary challenges to DoD OIG's FOIA responses centers on the propriety of certain redactions DoD OIG made to responsive documents. The issue of redactions is particularly well-suited to review through an agency appeal. But because plaintiff failed to file an administrative appeal for any of his FOIA requests, the agency has not had a chance to respond to plaintiff's challenges to these redactions. Accordingly, no record regarding these redactions has been compiled for judicial review. Thus, application of the exhaustion doctrine here would further rather than frustrate the purposes of FOIA and plaintiff's argument to the contrary must be rejected

Plaintiff next argues that exhaustion was not required in this case because any attempt to exhaust would have been futile. This contention fails; it is wholly unsupported by the factual record. To be sure, many courts, including the Fourth Circuit, have recognized a futility

9

exception to FOIA's exhaustion requirement. *See, e.g.*, *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 214 (4th Cir. 1997). But as the Fourth Circuit has instructed, to prevail on a futility argument, a party raising the futility argument must "demonstrate that an adverse decision is a certainty." *Id.* at 214; *see also Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (explaining that the futility exception to the exhaustion requirement applies only in cases "where following the administrative remedy would be futile because of certainty of an adverse decision"). Here, plaintiff cannot meet this sensibly rigorous requirement. Plaintiff has not identified any record evidence suggesting that an appeal to DoD's ultimate decision maker was certain to reach an adverse decision regarding the documents produced or the propriety of any redactions. To the contrary, the record evidence suggests that the DoD OIG employees assigned to review plaintiff's initial FOIA requests worked with plaintiff for months to identify documents responsive to those requests. *See, e.g.*, Dkt. 51-1 at 31-32. Moreover, there is no record evidence that plaintiff ever spoke to the final decisionmaker at DoD OIG and no record evidence indicates how that decisionmaker would have ruled on an administrative appeal. Thus, nothing in the factual record demonstrates the futility of an administrative appeal, and the futility exception is therefore unavailable to plaintiff on this factual record.

      Plaintiff's third argument against the application of the exhaustion requirement is that the exhaustion requirement was mooted by DoD OSD/JS's production of documents to plaintiff in the course of this litigation. This argument improperly imputes the actions of DoD OSD/JS, a defendant already dismissed from this suit by joint stipulation, to DoD OIG, the sole defendant remaining in this action. Although plaintiff is correct that the DC Circuit has held that the government's decision to disclose documents in the course of litigation can moot the exhaustion

requirement, *see Bayala v. United States Dep't of Homeland Sec.*, 827 F.3d 31 (D.C. Cir. 2016), plaintiff's argument fails to acknowledge that there are two different DoD subagencies—DoD OIG and DoD OSD/JS—involved in this litigation. It is DoD OIG who is raising the exhaustion defense, and there is no evidence in the record that DoD OIG has produced any new documents to plaintiff in the course of this litigation. Although DoD OSD/JS produced documents to plaintiff in the course of this litigation, that fact has no bearing on the requirement that plaintiff exhaust his administrative remedies with DoD OIG before filing this suit.

*    *    *

For the foregoing reasons, the undisputed record evidence shows that plaintiff failed to exhaust his FOIA requests through administrative appeals, and therefore defendant's motion for summary judgment must be granted. It is accordingly unnecessary to address defendant's arguments concerning the reasonableness of the search conducted by the agency.

An Order reflecting the issues resolved in this Memorandum Opinion will issue separately.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
May 18, 2022

/s/
T. S. Ellis, III
United States District Judge